IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANITA M. CLARKE, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-10-1366-HE |
| | ) |
| FEDERAL INSURANCE CO.; CHUBB | ) |
| GROUP OF INS. COS.; and THE | ) |
| ANHEUSER-BUSCH EMPLOYER | ) |
| BENEFIT TRUST, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Anita M. Clarke filed this action[1] seeking benefits under a Group Insurance Plan ("Plan") established for certain employees of Anheuser-Busch Companies, Inc. and its subsidiaries. Plaintiff's decedent was a participant in the Plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and funded by a blanket accident policy issued by defendant Federal Insurance Company ("Federal"). After the death of her husband, plaintiff submitted an accidental death claim to Federal, which it denied. Both parties have filed motions requesting judgment on the Administrative Record.[2]

Background

On September 10, 2009, plaintiff returned to her home and discovered her husband's

---

[1]*Although Chubb Group of Insurance Companies and the Anheuser-Busch Employer Benefit Trust were originally named as defendants, plaintiff dismissed her claims against them without prejudice.*

[2]*References to the Administrative Record will be to "AR" followed by the page number.*

body hanging from a braided ligature that was tied around his neck and around a banister in a bathroom. Ligatures also were tied around the decedent's waist and genitals. At the time of his death the decedent was engaging in a sexual practice know as autoerotic asphyxiation.[3] He had engaged in similar behavior twice before without incident, although his wife had told him not to do it when no one else was at their home because he could get hurt. There was no suicide note or message.[4] No alcohol was found in the decedent's system and plaintiff informed the sheriff that he had not taken drugs that day. Plaintiff told the sheriff that her husband had hung himself.[5] The EMS report reflects that plaintiff stated her husband "had been known to do this kind of thing before" and had told the Grady County Sheriff that it was not intentional. AR 0475. The sheriff thought the decedent could have stood up at any time because of his height and the location of the ligature tied to the banister and around his neck. The Oklahoma Medical Examiner concluded the cause of death was hanging and the manner of death was an accident. AR 0373.

Plaintiff submitted a claim for accidental death benefits under the Plan on November 16, 2009. During its claim investigation, Federal reviewed the EMS Report, the State

---

[3]*Autoerotic asphyxiation is the "practice of limiting the flow of oxygen to the brain during masturbation in an effort to heighten sexual pleasure." Critchlow v. First Unum Life Ins. Co. of America, 378 F.3d 246, 250 (2nd Cir. 2004).*

[4]*Although plaintiff asserts in her brief that Federal "has claimed that Roland committed suicide," plaintiff's brief, p. 5 and pp. 16-17, Federal did not rely on the Plan's suicide exclusion to deny plaintiff's claim for benefits. It relied on the intentional injury aspect of the Suicide or Intentional Injury exclusion. See AR 0266.*

[5]*The sheriff realized from plaintiff's comments that she was referring to autoerotic asphyxiation. AR 0189.*

Certificate of Death, the Sheriff's Report and the Medical Examiner's Report and interviewed the investigating officer.[6] Federal also considered prior legal memoranda regarding coverage under accidental death policies for autoerotic asphyxiation and then asked coverage counsel in December, 2009, to evaluate Tenth Circuit case law on the issue and consider the effect of the case being governed ERISA , rather than state law.[7] Coverage counsel analyzed plaintiff's claim, determined it should be denied and drafted the letter sent to plaintiff dated February 25, 2010, that denied her claim.

In its denial letter, Defendant Federal concluded the death was not an accident resulting in a "loss" or was an intentionally self-inflicted loss that was excluded under the suicide or intentional injury exclusion. Federal stated:

> The information provided to Federal indicates that Mr. Clarke specifically undertook to tie the ligature around his neck and the banister in the bathroom, and also intended to tie the additional ligatures around his waist and genital area, as part of engaging in auto-erotic asphyxiation. Federal does not consider these actions to constitute an "accident" as that term is used in the Policy and commonly understood. Moreover, even if the noted acts could be considered an "accident" – which Federal does not concede – Mr. Clarke's death from engaging in an act that required hanging himself, was a type of **Loss** specifically excluded under the **Suicide or Intentional Injury** exclusion, i.e. one that was intentionally self-inflicted.

AR 0266. Plaintiff administratively appealed the denial and Federal's ERISA Review

---

[6]*The officer explained that, while the incident report indicated the death was a suicide, that was "based on their system classification." AR 0460. The officer stated the death was not considered to be intentional, but rather was an accident, the result of autoerotic asphyxiation. Id.*

[7]*Although unclear, it appears that while Federal had outside counsel review the coverage issue several years ago, the updated claim review may have been done internally by in-house counsel. See AR 0379.*

Committee ("Committee") again denied the claim, after reviewing the claim file, considering research done by coverage counsel and having "consulted with a number of industry experts on the practice of AEA." AR 0006. In the denial letter, dated June 22, 2010, the Committee stated that it was

> clear that Mr. Clarke voluntarily placed himself in a situation where he intentionally restricted the flow of blood/oxygen to his brain. While it is apparent that his motive in doing so was to derive heightened sexual pleasure, he nevertheless intentionally engaged in activity that involved injury or death as a foreseeable consequence. In fact, Anita Kay Clarke told the investigating sheriff's deputy that she had an earlier encounter where she found Mr. Clarke engaging in the same activity and she warned him not to do the activity alone because he could get hurt. Death is not accidental if it results from a foreseen risk purposefully brought about.

AR 0004. The Committee concluded the death was not an accident resulting in a "loss" and that coverage was precluded by the suicide or intentional injury exclusion.

Standard of review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) sets forth the appropriate standard of review in cases contesting a benefit determination under an ERISA plan. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[8] *Id.* at 115. If the ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, [the court] review[s] the

---

[8]*ERISA does not establish the standard of review. Firestone, 489 U.S. at 109.*

administrator's decision for an abuse of discretion." Murphy v. Deloitte & Touch Group Ins. Plan, 619 F.3d 1151, 1157 (10th Cir. 2010) (internal citations omitted). The court curtails its review "[u]nder the arbitrary and capricious standard, ... asking only whether the interpretation of the plan 'was reasonable and made in good faith.'" [9] Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1010 (10th Cir. 2008) (quoting Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189 (10th Cir.2007)).

"Often the entity that administers [an ERISA] plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). "[T]his dual role creates a conflict of interest." Id. While "the presence of a dual role conflict does not alter the level of deference accorded an administrator's decision," the court "must weigh the conflict 'as a factor in determining whether there is an abuse of discretion,' according it more or less weight depending on its seriousness." Murphy, 619 F.3d at 1157 n.1 (quoting Glenn, 554 U.S. at 115)). "[A] conflict of interest affects the outcome at the margin, when [the court] waver[s] between affirmance and reversal." Hancock v. Metropolitan Life Ins. Co., 590 F.3d 1141, 1155 (10th Cir. 2009). "A conflict is more important when 'circumstances suggest a higher likelihood that it affected the benefits decision,' but less so when the conflicted party 'has taken active steps to reduce

---

[9]*The Tenth Circuit "treat[s] the terms 'arbitrary and capricious' and 'abuse of discretion' as interchangeable in this context." Weber v. GE Group Life Assur. Co., 541 F.3d 1002, 1010 n.10 (10th Cir. 2008) (internal quotations omitted).*

potential bias and to promote accuracy.'" *Id.* (quoting <u>Glenn</u>, 554 U.S. at 117).

The parties agree that the arbitrary and capricious standard of review applies here. They also agree that because Federal was both the insurer and plan administrator, it operated under a conflict of interest. Plaintiff asserts that the court must "take a hard look and determine if Federal's decision was arbitrary in light of its conflict of interest." Plaintiff's brief, p. 4. Federal argues that any conflict of interest should be given little weight because it "took 'active steps' to reduce potential bias and promote accuracy." Defendant's brief, p. 6.

The circumstances under which plaintiff's claim was denied do not suggest a "likelihood that [Federal's dual-role inherent conflict of interest] affected the benefits decision." <u>Glenn</u>, 554 U.S. at 117. Because Federal took some "active steps ... to promote accuracy" by seeking counsel's opinion of the current status of the law and conferring with experts regarding the practice of autoerotic asphyxiation, the conflict decreases in importance.[10] While Federal's dual-role conflict has been considered in "determining the lawfulness of the benefits denial," <u>Weber</u>, 541 F.3d at 1011, as the record does not demonstrate a significant risk that it affected Federal's decision, the court affords it little weight. *See* <u>Fugate v. Reliastar Life Ins. Co.</u>, 2005 WL 1225006, at *7 (M.D.Fla. 2005).

## Analysis

Having determined the proper standard of review, the court now must decide whether

---

[10]*Federal advised plaintiff on March 17, 2010, to forward any additional medical documents she wanted reviewed in conjunction with her claim, AR 0257, but apparently none were submitted.*

Federal's denial of plaintiff's accidental death claim was an abuse of discretion.[11] The court "'consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious.'" Weber, 541 F.3d at 1010 (quoting Flinders, 491 F.3d at 1190). The court begins its analysis by examining the language of the Plan. *Id*. The plan documents are scrutinized as a whole and if unambiguous are construed as a matter of law. *Id.* Words are given the common and ordinary meaning that "a reasonable person *in the position of the plan participant*, not the actual participant, would have understood the words to mean." *Id.* (internal quotations omitted).

If the plan language is ambiguous, the court then "take[s] a hard look and determine[s] whether [Federal's] decision was arbitrary in light of its conflict of interest." *Id.* (internal quotations omitted). "As part of this review, [the court] 'typically consider[s] whether: (1) the decision was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan.'" *Id.* (quoting Flinders, 491 F.3d at 1193).

In its initial denial letter, Federal stated that, based on the information it was provided, Mr. Clarke specifically undertook to tie the various ligatures as part of engaging in autoerotic asphyxiation. It did not consider such actions to constitute an "accident" as the term was used in the policy and commonly understood. If the acts could be considered an accident,

---

[11]*The court has confined its review to the administrative record,* Murphy, *619 F.3d at 1157.*

7

Federal took the position that the death "from engaging in an act that required hanging himself, was a type of **Loss** specifically excluded under the **Suicide or Intentional Injury** exclusion, i.e. one that was intentionally self-inflicted." AR 0266.

Plaintiff argues that defendant's interpretation of "accident" to exclude an unintended death from autoerotic asphyxiation is unreasonable because an "accident," as the term is commonly understood, involves an unintended result.[12] She compares the decedent's conduct here with that of reckless or intoxicated drivers. They also engage in intentional conduct, including speeding or turning, that leads to unintended results, i.e. collisions, that are "readily accepted as 'accidents.'" Plaintiff's brief, p. 11 (quoting LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 807 (10th Cir. 2010). Plaintiff relies on the conclusions of the Sheriff and Medical Examiner that her husband's death was an accident,[13] and argues that defendant's attempt to

---

[12]*Plaintiff also argues that defendant appears to be advancing a per se rule regarding deaths from autoerotic asphyxiation. That conflicts, she claims, with the Tenth Circuit's recent rejection of a per se rule that all alcohol-related deaths are per se nonaccidental in* LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 802 (10th Cir. 2010). The record does not demonstrate that defendant was applying a per se rule. In making its decision the ERISA Review Committee considered the particular facts of the case. 9/21/2010 File Note ("From reviewing the various decision around the country on the topic of autoerotic asphyxiation ('AEA'), it appeared that the court were more apt to find coverage where the victim took extra measures to protect him or herself from accident strangulation. . . . [G]iven the facts of this case, it was not apparent that Mr. Clarke took any measures to protect himself from an accidental hanging."). AR 0006.*

[13]*Plaintiff also contends that Federal's decision was unreasonable because it failed to consider an "external standard," such as a New York Times article or the Diagnostic and Statistical Manual of the American Psychiatric Association, which "informs us that deaths from [autoerotic asphyxiation] are 'accidents.'" Plaintiff's brief, p. 13. Plaintiff offers no authority that an insurer's decision is unreasonable if it fails to consult a medical manual in these circumstances. While that might be a factor to consider, the court concludes it is not determinative here, where Federal did consult industry experts and had counsel review pertinent case law on the question of whether a*

8

inject a "foreseeability component" into the definition of accident is foreclosed by LaAsmar, 605 F.3d at 809-810.

With respect to Federal's assertion that the death was excluded by the self-inflicted injury provision of the Plan, plaintiff cites Cranfill v. Aetna Life Ins. Co., 49 P.3d 703 (Okla.2002), in which the Oklahoma Supreme Court, in answering certified questions, concluded that an intoxicated driver's death in a single vehicle car wreck was not excluded from accidental death coverage under a policy's intentionally self-inflicted injury exclusion. The Oklahoma court held that there was coverage unless the insured intended to cause his own death.

> The pertinent Plan language provides:
>
> **Loss** means the type of accidental bodily **Injuries** listed in Section IV of the Declarations, Benefits, and for which this insurance provides coverage.
>
> **Injury(ies)** means bodily **Injury** which is accidental, is the direct source of a **Loss**, is independent of disease, illness or other cause and occurs while this policy is in force.
>
> **Suicide or Intentional Injury**
>
> This insurance does not apply to suicide or attempted suicide, while sane, or **Loss** that is intentionally self-inflicted.

AR 0266. Courts generally are in agreement that the terms accident and intentionally self-

---

*death resulting from autoerotic asphyxiation was covered under an accidental death policy. Plaintiff also could have submitted, but did not, "written comments, documents, records and other information related to the claim that [she felt was] relevant and should be considered." AR 0266-67.*

inflicted injuries[14] are ambiguous in the context of a claim for accidental death benefits for a death resulting from autoerotic asphyxiation. *E.g.*, Critchlow v. First Unum Life Ins. Co. of America, 378 F.3d 246, 263 (2nd Cir. 2004); *see generally* LaAsmar, 605 F.3d at 803 (term "accident" as used in ERISA plan and considered in conjunction with claim for benefits after insured died in crash while driving drunk was ambiguous ).  However, they are split on the question of whether death from autoerotic asphyxiation is a covered loss.  Two appellate courts, using a subjective/objective analysis, have concluded that death resulting from autoerotic asphyxiation can be considered accidental and not the result of an intentional self-inflicted injury.  In Critchlow the Second Circuit determined that the decedent, who died during the practice of autoerotic asphyxiation, subjectively lacked an expectation of death or injury and further found that his expectation was reasonable.  It was undisputed that Critchlow's death was subjectively unexpected and unintended, and the Second Circuit concluded that Critchlow's subjective belief that he would survive was objectively reasonable because he had engaged in autoerotic asphyxiation for two decades apparently without any injurious effects, and had "set up an elaborate escape mechanism designed to save him if he began to lose consciousness." Critchlow, 378 F.3d at 260.  The court rejected the theory that "partial strangulation is an injury in and of itself," *id.,* relying on "the apparently well-accepted medical and scientific views that the physiological effects of partial

---

[14] *The exclusions pertaining to self-inflicted injuries that were at issue in some of the cases differ slightly from the exclusion in the Federal policy. For example, the exclusion considered by the Second Circuit in* Critchlow v. First Unum Life Ins. Co. of America, 378 F.3d 246 (2nd Cir. 2004)) *stated the insurer would "not pay if the loss [was] caused by: (1) intentionally self-inflicted injuries. . . ." Id. at 249. Plaintiff did not distinguish any of the cases on the basis of the difference in language and the court does not find the distinction to be significant.*

10

strangulation without loss of consciousness-absent an accident-are a temporary lightheadedness and euphoria with no serious or lasting adverse impact on one's health, and that autoerotic asphyxiation is not likely to result in death." *Id.* (internal citation omitted).

The Second Circuit's analysis and conclusions parallel those of the Ninth Circuit in Padfield v. AIG Life Ins. Co., 290 F.3d 1121 (9th Cir. 2002). There the Ninth Circuit held that the decedent

> voluntarily engaged in actions that led to a fatal injury, but his reasonable expectation was that this behavior would not have resulted in "injury" as that word is commonly defined. Given both the usual pattern of autoerotic asphyxiation and the statements by Mrs. Padfield, the undisputed facts in this case show that Mr. Padfield, having performed the act in the past without inflicting any injury, had a reasonable expectation that he would be able to do so again. Thus, like the insured in Santaella, Mr. Padfield did not die from an intentionally self-inflicted injury. Rather, he made a "fatal mistake."

*Id.* at 1130 (internal quotations omitted). *Contra* dissent at 1130 ("I would hold, as a matter of law, that Mr. Padfield's act of tying a necktie around his neck with the intent to restrict the flow of oxygen to his brain was an intentionally self-inflicted injury which resulted in his death. The policy excludes coverage for such a loss.").

Other courts have reached the opposite conclusion. *See* Estate of Thompson v. Sun Life Assur. Co. of Canada, 603 F.Supp.2d 898, 911 (N.D. Tx. 2008) (collecting cases discussing whether autoerotic asphyxiation involves self-inflicted injury), *aff'd*, 354 Fed.Appx. 183 (5th Cir. 2009) (unpublished). They have upheld decisions denying benefits for deaths caused by autoerotic asphyxia on the ground the claims were excluded by self-inflicted injury provisions. Sigler v. Mutual Benefit Life Ins. Co., 663 F.2d 49 (8th Cir. 1981) (applying state law, court affirmed trial court's denial of claim for death benefits on

the grounds that "the insured's cause of death, autoerotic asphyxia, was self-inflicted injury resulting in death which under Iowa law was not an accident, since a reasonable person would have recognized that his actions could result in his death") (internal quotations omitted); Bond v. Ecolab, Inc., 2007 WL 551595 (E.D. Mich. 2007); Hamilton v. AIG Life Ins. Co.,182 F.Supp.2d 39 (D.D.C. 2002).  Their rationale is that the decedent "intentionally and knowingly restricted the blood flow from his head in a purposeful effort to limit his brain's supply of oxygen."  Bond, 2007 WL 551595, at *6.  *See* Estate of Thompson, 603 F.Supp.2d at 910-11 ("Thompson's self-inflicted hanging and the resulting cessation of blood and oxygen flow to his brain were injuries. The Court respectfully disagrees with courts that have concluded that the act of autoerotic asphyxiation does not involve what is commonly understood as an injury.); Hamilton, 182 F.Supp.2d at 49 ("AIG responds that regardless of any lasting effect, a reasonable person might conclude that partial strangulation is an injury. This court agrees with AIG.").  These courts generally found it unnecessary to decide whether the death was accidental, as they found the insurer's reliance on the self-inflicted injury exclusion was not arbitrary and capricious. *E.g.*, Bond, 2007 WL 551595, at * 4.

While the Crichlow and Padfield courts' analysis might be persuasive in some circumstances, the standard of review in those cases was *de novo*, not arbitrary and capricious. *But see* Bryant v. AIG Life Ins. Co., 2002 WL 34504617, at *5 (W.D. Mich. 2002) ("Upon *de novo* review, and notwithstanding the Ninth Circuit's opinion to the contrary, this Court joins the overwhelming majority of federal courts in concluding that the partial strangulation involved in autoerotic asphyxiation comes within the plain meaning

of" "intentionally self-inflicted injury.'"). Where, as here, the court's role is to determine whether the insurer abused its discretion, the court "does not have the luxury of interpreting the Plan's language de novo, but rather must determine whether [Federal's] conclusion was reasonable in light of the Plan's language." *See* LaAsmar, 605 F.3d at 809 n.18 (distinguishing cases reaching opposite conclusion on the basis that "unlike the case here, in those cases the federal courts were reviewing the plan administrators' denial of benefits using the far more deferential arbitrary-and-capricious standard"); Bond, 2007 WL 551595, at *6 ("In both Padfield and Critchlow ... the courts reviewed the administrators' decisions de novo and interpreted the language of the plans according to general principles of contract interpretation, which included construing ambiguous language in the policies strictly against the insurer and reading the exclusionary language narrowly."). Considering Federal's decision under the deferential arbitrary and capricious standard, the court concludes its determination that the intentional injury exclusion barred plaintiff's claim was reasonable.[15] *See* Estate of Thompson, 354 Fed.Appx. 183; Bond, 2007 WL 551595; Fugate, 2005 WL 1225006; Hamilton,182 F.Supp.2d at 39.

As Federal noted in its initial benefit denial, it was "clear that Mr. Clarke voluntarily placed himself in a situation where he intentionally restricted the flow of blood/oxygen to his

---

[15]*Because of this conclusion the court does not have to consider whether Federal's determination that the death was not accidental was reasonable. While some courts have concluded that death due to autoerotic asphyxia is not an accident, the Tenth Circuit in dicta has indicated it might conclude otherwise.* LaAsmar, *605 F.3d at 806-07 ("Under the terms of the Plan, at the non-accident end of the spectrum, we expect, without deciding, that a reasonable person would think the following were not 'accidents': if the insured intentionally caused the crash; if the insured died as a result of playing Russian roulette; or if an insured died in his vehicle while playing 'chicken' with a train or another vehicle.).*

brain." AR 0004. While it was "apparent that his motive in doing so was to derive heightened sexual pleasure," *id.*, a reasonable person could conclude, as Federal did, that the decedent "nevertheless intentionally engaged in activity that involved injury. . . . " AR 0004. The fact that "courts and experts disagree over whether ... a constriction of oxygen to the brain due to the practice of autoerotic asphyxiation is an intentional self-inflicted injury or not," Fugate, 2005 WL 1225006, at *6, supports the conclusion that Federal's decision was reasonable. Hamilton, 182 F.Supp.2d at 49 ("However, the fact that reasonable minds might differ on the question simply proves that it is not an abuse of discretion to decide that partial strangulation is an injury.").

Plaintiff is correct that courts have found coverage under accidental death policies for deaths resulting from other risky behaviors. One example is Cranfill, cited by plaintiff.[16] There the Oklahoma Supreme Court concluded that, for purposes of an accidental death insurance policy, death due to drinking and driving was accidental and not an intentionally self-inflicted injury. However, courts have distinguished cases involving deaths from autoerotic asphyxia on the basis that "the goal of [other risky] activities, and thus the participant's intent, [was] not to induce hypoxia." Bond, 2007 WL 551595, at *8. The dissent in Padfield explained the distinction:

> [I]n the present case, Mr. Padfield intended to restrict the flow of oxygen to his brain by self-asphyxiation with a necktie. This intentional act inflicted an

---

[16]*As defendant notes, Cranfill is not controlling authority in this action brought under ERISA. See Estate of Thompson, 603 F.Supp.2d at 911 ("'Insurance policies governed by ERISA are to be interpreted in light of federal common law' but '[i]n ascertaining the applicable federal common law, [a court] may draw guidance from analogous state law.'") (quoting Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451 (5th Cir.1995)).*

> injury from which Mr. Padfield never recovered. Whether such an intentional act leaves ligature marks on the deceased's body is of little or no significance. Mr. Padfield's intentional act of injuring his brain rendered it incapable of functioning. His intentional act caused injury to a live organ. This injury to his brain rendered it incapable of saving him from death.

Padfield, 290 F.3d at 1331 (Leavy, J., dissenting).

"To survive ... review, [Federal's] decision 'need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis.'" Hancock, 590 F.3d at 1155 (quoting Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan, 379 F.3d 1168, 1176 (10th Cir.2004)). As Federal's decision was grounded on a reasonable basis, it will be upheld.

## Conclusion

Considering the record in light of pertinent case law and the Flinders' factors, the court finds Federal's conclusion that the intentional injury exclusion precluded coverage for plaintiff's claim was not arbitrary and capricious. Accordingly, plaintiff's motion for judgment on the Administrative Record will be **DENIED** and defendant's motion will be **GRANTED**.

**IT IS SO ORDERED**.

Dated this 7th day of October, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE